UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:26-cv-00280-FDW

| | | |
|---|---|---|
| **DONTE D. SHINE,** <br><br> **Plaintiff,** <br><br> **vs.** <br><br> **MONICA Z. VARNEY, et al.,** <br><br> **Defendants.** | ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, [Doc. 1], filed under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1915(e)(2) and 1915A. Plaintiff is proceeding in forma pauperis in this matter. [Docs. 2, 4].

## I. BACKGROUND

Pro se Plaintiff Donte D. Shine ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Harnett Correctional Institution in Lillington, North Carolina. On September 8, 2026, he filed this action pursuant to 42 U.S.C. § 1983 based on events he alleges occurred at Foothills Correctional Institution ("Foothills") in Morganton, North Carolina. [Doc. 1]. He names the following Foothills officials as Defendants in their individual capacities only: Monica Z. Varney, Unit Manager; Diedra Huffman, Nurse Practitioner; FNU Smith, Correctional Officer; FNU Blankenship, Correctional Sergeant; John Does #1-5, identified as "prison officials;" and Jane Does #1-5, identified as "prison and medical officials." [Id. at 1-2].

Plaintiff alleges as follows.

In December 2023, following an incident between the Plaintiff and another inmate, Tyler Day, Unit Manager Douglas Taylor told Plaintiff that Day would be reclassified to Foothill's

Security Threat Group (SRG) Unit, F Unit. [Doc. 1 at 2-3]. F Unit houses inmates at high risk of violence. In early February 2024, Plaintiff was housed in F Unit. [Id. at 2]. During the second week of February 2024, Plaintiff told Defendant Varney that Day had threatened to harm the Plaintiff and that Plaintiff feared for his safety. Plaintiff requested to be moved to a different wing, but Defendant Varney laughed at him. She told Plaintiff, "[T]his is prison[.] [E]veryone is scared for their safety." [Id. at 3].

On March 1, 2024, Defendant Blankenship met with the Plaintiff and Day after observing an argument between them. Defendant Blankenship told Day to "handle whatever it is while [Blankenship's] not looking." [Id.]. On April 3, 2024, Plaintiff heard Day tell Defendant Blankenship that he was planning to settle his issues with the Plaintiff "without stabbing him." Day further stated that Plaintiff "was going against the structure in place" and "showing disrespect to his gang." [Id.].

On June 22, 2024, Day stabbed the Plaintiff in the right forearm during outside recreation. Defendants Smith and Blankenship were notified of the incident and did not radio for medical assistance, despite Plaintiff's request to see medical. Plaintiff has a permanent scar from this incident. [Id.]. Later that day, Defendant Blankenship "coerced" the Plaintiff not to report the incident, threatening Plaintiff with bodily harm if he did. Defendant Blankenship shredded the Plaintiff's grievance regarding the incident. [Id.].

On August 17, 2024, three known gang members, including Day, assaulted the Plaintiff. [Id.]. Other inmates notified Defendant Smith regarding the assault. [Id. at 3-4]. Plaintiff later requested a grievance form from Defendant Smith. Defendant Smith refused to provide the form. [Id. at 4].

On October 5, 2024, Plaintiff asked Defendant Varney again about being moved to another

unit for his safety. Defendant Varney told Plaintiff that inmates do not make demands in her unit. On October 13, 2024, Defendant Blankenship told several inmates in Plaintiff's wing that "he was a snitch and that they should watch their backs." [Id. at 4]. When officers label an inmate a snitch, the inmate population becomes violent and oppressive toward that inmate. [Id.].

On December 12, 2024, Defendant Blankenship observed Day throw hot water on the Plaintiff and the altercation that followed. Defendant Blankenship did not radio for assistance or for medical personnel to treat the injuries sustained from the incident. [Id.].

Between February 2024 and January 2025, Plaintiff witnessed Defendant Varney shred seven grievances submitted by the Plaintiff. These grievances complained of unsafe prison conditions and threats ignored by staff. [Id.].

On January 5, 2025, Plaintiff informed Defendants Varney and Blankenship "via a request form" that Day threatened to stab him. Plaintiff requested to be placed in protective custody immediately. Later that day, Defendant Varney told Plaintiff, "[W]e don't have protective custody at this prison." [Id.]. At one point, Defendant Blankenship suggested that Plaintiff join Day's gang for protection. [Id.].

On January 13, 2025, Day swung at the Plaintiff after the two had a verbal argument. Defendant John Doe #1 witnessed the incident but did not discipline Day. [Id. at 4-5]. The next day, Plaintiff told Defendant Blankenship that he did not feel safe in the same wing as Day and again requested to be moved. Plaintiff's request was denied. [Id. at 5].

On January 22, 2025, Day entered Plaintiff's cell in lower F Unit, south wing, after it was unsecured by Defendant John Doe #1, who was working the control booth. Day brutally assaulted Plaintiff while Defendant John Doe #1 watched from the control booth. After the assault, Defendant Blankenship and Officer Jenkins handcuffed the Plaintiff and placed him in a holding

cell on E Unit. Plaintiff told Defendant Blankenship that he suffered a seizure during the assault and felt woozy and requested medical attention. [Id.]. Despite, on information and belief, having actual knowledge that Plaintiff suffered from seizures, Blankenship ignored Plaintiff's request for medical attention. [Id. at 6]. As a result of this incident, Plaintiff suffered a left elbow injury that has limited his mobility, neuropathy in his left arm, and head trauma causing episodic seizures. [Id. at 7].

Plaintiff generally alleges that Defendants Varney and Blankenship established "a hostile living environment plagued with bribery, stabbings and gang violence" and, at relevant times, failed to adhere to general operating procedures established by the Foothills Warden. [Id.]. Moreover, Defendants Varney, Smith, Blankenship, and John Doe #1 knew of "a great degree of risk of physical harm" to the Plaintiff and took no action "in the face of [this] actual knowledge." [Id. at 13].

On January 27, 2025, Defendant Blankenship charged Plaintiff with a B-22 infraction in connection with the January 22, 2025 incident. [Id. at 6]. Later that day, Plaintiff gave a written statement to Defendant Blankenship. On information and belief, Defendant Blankenship falsified the incident report, as did Defendants Smith and John Doe #1 on Blankenship's instruction. [Id.]. On January 29, 2025, Plaintiff submitted a sick call request, complaining about increased pain and deterioration of motor skills in his left arm. [Id. at 8].

On February 2, 2025, a fellow inmate, Derrick Letterlough, gave Plaintiff an affidavit in which he claimed that Defendant Blankenship approached him, Letterlough, about stabbing Plaintiff for a pack of cigarettes. [Id. at 7].

On February 5, 2025, Plaintiff asked Defendant Smith for a roll of toilet paper. Defendant Smith told Plaintiff to "use a grievance form since you like to bitch all the time." Plaintiff used a

sock to clean himself after defecating. [Id. at 6].

On February 6, 2025, Plaintiff asked Defendant John Doe #1 for medical attention for his elbow injury. Defendant John Doe #1 told the Plaintiff that Defendant Blankenship directed that "medical wasn't coming down here unless [Plaintiff was] dying or bleeding." [Id.]. Later that day, Plaintiff wrote a grievance complaining that Defendant Blankenship denied him medical attention. When Plaintiff submitted the grievance, Defendant Blankenship ripped it in half and told Plaintiff he would not process it. Blankenship then got in Plaintiff's face and told Plaintiff he would "regret it" if he wrote another grievance about him. [Id.].

On February 9, 2025, Plaintiff submitted grievances against Defendant Blankenship for threatening him and opening Plaintiff's legal mail outside Plaintiff's presence. [Id. at 6]. The next day, after Defendant Blankenship received notice of these grievances and in "reprisal" therefore, he ordered Defendants Smith and John Doe #1 to "deliver a message" to Plaintiff. Later that day, Defendants Smith and John Doe #1 cornered Plaintiff in a secluded area. After telling Plaintiff, "I have a message from Sergeant Blankenship," she struck Plaintiff with her baton in the stomach and on his left injured elbow. Defendant John Doe #1 witnessed the assault and did not intervene. [Id. at 7].

On March 4, 2025, Plaintiff was seen by Nurse Practitioner ("NP") Halstead on his January 29 sick call request. [Id. at 8]. Plaintiff notified NP Halstead of pain in his elbow. NP Halstead examined the Plaintiff and made a Utilization Request ("UR") request for an x-ray. NP Halstead did not prescribe pain medication at that time. [Id.].

On April 14, 2025, Plaintiff submitted a grievance regarding the pain in his left arm and requested an MRI. [Id.]. On May 2, 2025, Plaintiff was seen by Defendant Huffman for his left elbow injury. Plaintiff explained his limited range of motion and constant numbness. [Id. at 9].

Defendant Huffman ordered an MRI and an orthopedic consultation. She explained that North Carolina Department of Adult Correction (NCDAC) policy requires approval from the UR Board for an MRI. She also explained that the UR Board generally denies the first request for outpatient diagnostic testing. [Id.]. Despite Plaintiff's "repeated requests," Defendant Huffman declined to prescribe any pain medication for the Plaintiff. [Id.].

On June 27, 2025, Plaintiff underwent an MRI of his left arm at an outside hospital. On July 18, 2025, Plaintiff was seen via Webex by Dr. William Todd, an orthopedist. Dr. Todd explained the MRI findings to the Plaintiff. He informed Plaintiff that the tendon around Plaintiff's left elbow had "thickened" beyond normal size and was the cause of Plaintiff's pain and limited range of motion. Dr. Todd explained that if left untreated this condition would lead to permanent damage. [Id.]. Dr. Todd ordered that Plaintiff undergo occupational therapy ("OT") on his left arm and receive a follow-up assessment at an outside hospital. [Id.].

On August 6, 2025, Plaintiff met with Defendant Huffman in follow up on his elbow. Plaintiff stated that he remained unable to bend his left arm without experiencing sharp pains. [Id.]. Plaintiff "informed" Defendant Huffman that he had been experiencing nocturnal seizures since the January 22, 2025 incident. [Id. at 10]. Defendant Huffman requested a neurology consult and an EEG for the Plaintiff. [Id.]. On August 7, 2025, Plaintiff reported episodes of nocturnal seizures to Defendant Jane Doe #2, who personally notified Defendant Huffman of the seizures.[1] [Id.]. Defendant Jane Doe #2 is responsible for arranging for specialized medical care outside the prison and oversees transportation of inmates to medical appointments. [Id. at 11].

Defendant Jane Doe #1 is responsible for inmate medical care generally and for arranging

[1] It is unclear whether Plaintiff alleges that he actually told Defendant Huffman regarding his seizures since the January 22, 2025 incident or that Defendant Huffman only learned of them through Defendant Jane Doe #2.

for specialized medical care outside the prison. [Id.]. Defendants Huffman and Jane Doe #1 knew the serious risk of degeneration in Plaintiff's elbow if not treated "expeditiously." [Id. at 9]. Furthermore, "[o]n information and belief, Defendants Huffman and Jane Doe #1 had actual knowledge at all relevant times that Plaintiff was suffering from "a serious medical condition." [Id. at 10]. Defendant Huffman personally observed and was aware of Plaintiff's deteriorating physical condition. [Id.].

Defendant John Doe #2, on information and belief, issued orders, policies, and/or directives prohibiting NCDAC-employed nurses and nurse practitioners from providing OT due to "budget expenses." [Id.]. Nonetheless, on August 19, 21, and 26, 2025, Plaintiff was scheduled to see an occupational therapist at a nearby outside clinic but was not transported to these appointments due to staffing shortages. [Id.]. Plaintiff also alleges, however, that Defendants Huffman and Jane Doe #1 were aware of Plaintiff's pain and limited mobility and Dr. Todd's OT recommendation but refused to arrange OT appointments despite staff availability or provide Plaintiff with pain medication. [Id. at 12]. Instead, Defendant Huffman falsified medical records. [Id.].

On October 9, 2025, Plaintiff was seen by a neurologist at UNC Hospital via Webex. The neurologist ordered that Plaintiff undergo an MRI of his head and an EEG. [Id. at 10-11]. On October 23, 2025, Plaintiff was transported to an outside hospital for an EEG. [Id. at 11].

On October 30, 2025, Plaintiff was transferred to Scotland Correctional Institution ("Scotland CI"). [Id.]. After transferring to Scotland CI, Plaintiff submitted a grievance inquiring about the status of his OT treatment plan. In the Step One Response, Plaintiff was informed that the UR Board entered a discontinuation of this therapy after Plaintiff refused an OT evaluation. Plaintiff, however, never refused any treatment related to his left elbow injury. [Id.]. On December 21, 2025, Plaintiff submitted a grievance disputing the claim of this refusal. Through

five grievances since December 21, 2025, Plaintiff has inquired about his OT. [Id. at 11]. He has received no response from the Scotland CI medical department. Plaintiff remains in "great pain" and with limited mobility in his left arm. [Id. at 12]. He risks permanent disability without the OT ordered by Dr. Todd. [Id.].

Plaintiff purports to state claims for violation of his rights under the First, Eighth, and Fourteenth Amendments, as well as under state law for assault and battery and negligence.[2] [Id. at 13-16]. Plaintiff claims injury to his elbow, neuropathy, and episodic seizures and otherwise seeks relief for undefined emotional injuries. [Id. at 7, 17]. Plaintiff seeks declaratory, monetary, and injunctive relief. [Id. at 15-17].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding pro se, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972).

[2] The Court will address those claims fairly raised by Plaintiff's Complaint.

However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 143 S.Ct. 1444 (2023).

### A. Retaliation

An inmate has a clearly established First Amendment right to be free from retaliation for filing lawsuits. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017); Thompson v. Commonwealth of Va., 878 F.3d 89, 110 (4th Cir. 2017). Inmates also have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them. See Patton v. Kimble, 717 Fed. App'x 271, 272 (4th Cir. 2018).

To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted). Retaliation claims brought by prisoners, however, are treated with skepticism because every act of discipline by a prison official is retaliatory in that it responds directly to prisoner misconduct. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). More, bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Id., 40 F.3d at

74.

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, his First Amendment retaliation claim against Defendants Smith, Blankenship, and John Doe #1 pass initial review as not clearly frivolous. To the extent Plaintiff sought to state a retaliation claim against any other Defendant, the Court will dismiss these claims for Plaintiff's failure to state a claim for relief.

**B. Excessive Force and Failure to Protect**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21.

Furthermore, "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quotation marks omitted). The Eighth Amendment's Cruel and Unusual Punishments Clause also imposes on prison officials a duty to protect prisoners from violence at the hands of other prisoners and other prison officials. See Farmer, 511 U.S. at 833. To state a claim against a prison official for failure to protect, an inmate must show: (1) "serious or significant physical or

emotional injury," and (2) that prison officials exhibited deliberate indifference to inmate health or safety." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks omitted). To be deliberately indifferent, a prison official must "know of and disregard an objectively serious … risk of harm." Id.

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff's excessive force claim against Defendant Smith and Plaintiff's failure to protect claims against Defendants Varney, Blankenship, and John Doe #1 survive initial review as not clearly frivolous. To the extent Plaintiff seeks to state such claims against any other Defendant, the Court will dismiss these claims for Plaintiff's failure to state a claim for relief. As for Defendant Smith in particular, Plaintiff's allegations that Smith was notified of the June 22, 2024 and August 17, 2024 incidents, without more, are insufficient to show that she knew of and disregarded an objectively serious risk of harm. See De'Lonta v. Angelone, 330 F.3d at 634. Moreover, Plaintiff's conclusory and factually devoid allegation that Smith knew of a great risk of physical harm to the Plaintiff and failed to take act is insufficient to make out a failure to protect claim.

**C. Deliberate Indifference to a Serious Medical Need**

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment also fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). An official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks but nevertheless disregards

them. DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, his Eighth Amendment claim based on alleged deliberate indifference to his serious medical needs against Defendant Blankenship survives initial review as not clearly frivolous.

As for Defendant Huffman, Plaintiff's allegations show that she diligently and repeatedly sought to treat Plaintiff for all his conditions. While Plaintiff purports to allege that Defendant Huffman refused to arrange OT appointments, Plaintiff also alleges that he was scheduled for several such appointments but not transported to them because of staffing shortages. Additionally, Plaintiff alleges that Defendant Jane Doe #1, not Defendant Huffman, was responsible for arranging for medical care outside the prison. At best, Plaintiff alleges that Defendant Huffman did not prescribe him pain medication despite Plaintiff's reports of pain. Plaintiff, however, failed to allege the degree or type of pain he experienced, and his allegations suggest nothing more than a disagreement between he and Defendant Huffman regarding appropriate care, which does not implicate Plaintiff's constitutional rights. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

As to Defendant Smith, Plaintiff's allegations are insufficient to show that she was actually aware of a substantial risk of harm to the Plaintiff and failed to act relative to a serious medical need. Plaintiff alleges only that Defendant Smith was notified of the June 22, 2024 incident and

did not radio for medical assistance. Plaintiff did not allege anything regarding the scope or seriousness of his injuries or of Smith's subjective awareness thereof.

As for Defendant John Doe #1, Plaintiff alleges only that he asked this Defendant for medical attention for his elbow injury on February 6, 2025, and that this Defendant repeated Defendant Blankenship's direction that Plaintiff would not receive medical attention unless he was "dying or bleeding." Moreover, as to Defendant John Doe #2, Plaintiff alleges only this Defendant issued orders prohibiting NCDAC-employed nurses and nurse practitioners from providing OT due to budget constraints. These allegations are plainly insufficient to satisfy the elements for a medical deliberate indifference claim by the Plaintiff as to either of these John Doe Defendants.

Regarding Jane Doe #1, Plaintiff alleges that she was generally responsible for inmate medical care and, as noted, for arranging for specialized medical care outside the prison. Plaintiff also alleges, like Defendant Huffman, that Jane Doe #1 refused to arrange OT appointments despite staff availability and knowing Plaintiff's pain and mobility issues. Again, however, Plaintiff's allegations are self-defeating because he also alleges that he was scheduled for several OT appointments, presumably arranged by Defendants Jane Doe #1 and/or Jane Doe #2, but that he could not be transported due to staffing shortages. These allegations are insufficient to show that Jane Doe #1 was actually aware of a substantial risk of harm to the Plaintiff and failed to act.

Finally, as to Jane Doe #2, Plaintiff alleges only that he reported his nocturnal seizures to her on August 7, 2025, and that she was responsible for arranging specialized medical care outside the prison and oversaw transportation of inmates to medical appointments. These allegations are also plainly insufficient to support a claim for medical deliberate indifference.

For these reasons, the Court will dismiss Plaintiff's medical deliberate indifference claims against Defendants Huffman, Smith, John Does #1 and #2, and Jane Does #1 and #2.

### D. Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams, 77 F.3d at 761. "The Eighth Amendment 'does not prohibit cruel and unusual prison conditions.'" Thorpe v. Clarke, 37 F.4th 926, 940 (4th Cir. 2022) (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)). "It asks instead whether the conditions of confinement *inflict harm* that is, objectively, sufficiently serious to deprive a prisoner of minimal civilized necessities." Id. (citation omitted) (emphasis in original). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Extreme deprivations are required. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious—and subjective component—that the prison official acted with a sufficiently culpable state of mind. Williams, 77 F.3d at 761. The Supreme Court has stated that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler, 989 F.2d at 1381.

To the extent Plaintiff seeks to state a claim under the Eighth Amendment based on the conditions of his confinement, he has failed. That is, Plaintiff alleges only that Defendant Smith denied him toilet paper on one occasion and that Defendants Varney and Blankenship "established

a hostile living environment plagued with bribery, stabbings and gang violence." [Doc. 1 at 7]. These allegations lack the extreme deprivation of life's minimal civilized necessities required to make out a claim based on conditions of confinement. Moreover, Plaintiff has not alleged having suffered a significant physical or emotional injury relative to the single instance of being without toilet paper. The Court, therefore, will dismiss these claims.

**E. Impeding the Grievance Process**

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "An inmate this cannot bring a § 1983 claim alleging denial of a specific grievance procedure." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). As such, to the extent Plaintiff purports to state a claim against any Defendant based on shredding grievances or otherwise denying access to the grievance procedure, he has failed. The Court will dismiss this claim.

**F. Mail Interference**

"[L]egal mail is widely recognized to be privileged and confidential — even in the context of prisons — which suggests that an incarcerated person's expectation of privacy in his legal mail is one 'that society is prepared to consider reasonable.'" Haze v. Harrison, 961 F.3d 654, 660 (4th Cir. 2020) (quoting United States v. Catellanos, 716 F.3d 828, 832 (4th Cir. 2013)); see King v. Rubenstein, 825 F.3d 206, 215 (4th Cir. 2016) ("[N]othing in Hudson indicates the Supreme Court intended to abrogate a prisoner's expectation of privacy beyond his cell."). However, a prison rule requiring that legal mail be opened in the presence of the inmate, without being read, does not infringe on a prisoner's constitutional rights. See Wolff v. McDonnell, 418 U.S. 539, 575–77 (1974); see also Turner v. Safley, 482 U.S. 78, 89 (1987) (prison restrictions impinging on an inmate's constitutional rights are valid if they are reasonably related to legitimate

penological interests).

Nonetheless, isolated incidents of mail mishandling do not rise to the level of a constitutional violation. See Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (stating that "a few isolated instances of plaintiff's mail being opened out of his presence" that were "either accidental or the result of unauthorized subordinate conduct ... were not of constitutional magnitude"); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation.").

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, he has failed to state a claim based on alleged mishandling of his legal mail. That is, Plaintiff alleges only a single instance of Defendant Blankenship opening Plaintiff's legal mail outside of Plaintiff's presence. The Court, therefore, will dismiss this claim.

### G. Fourteenth Amendment

Plaintiff alleges violation of his rights under the Fourteenth Amendment. [Doc. 1 at 13]. He does not allege, however, how he contends these rights were violated or which Defendant or Defendants violated these rights. [See id.]. Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, it appears Plaintiff may seek to state a claim based on alleged false statements by Defendants Smith and John Doe #1 related to the January 22, 2025 incident and/or Defendant Blankenship based on his charging Plaintiff with a B22 infraction as a result thereof. [Doc. 1 at 5-6].

Any claim based on false disciplinary charges, however, appears to be barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the United States Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction and sentence has

been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id. at 485-87 (footnotes omitted). In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court extended the Heck rule to claims alleging constitutional deficiencies in prison disciplinary proceedings that have resulted in the loss of good time credits.

Here, if the Plaintiff were to prevail on a claim that any disciplinary charges were unfounded, that would necessarily imply the invalidity of the disciplinary convictions. See, e.g., Edwards, 520 U.S. at 646-47 (plaintiff's claims that he was denied the opportunity to put on a defense and that there was deceit and bias by the hearing officer would necessarily imply the invalidity of the disciplinary proceedings); Moskos v. Hardee, 24 F.4th 289 (4th Cir. 2022) (prisoner could not bring § 1983 due process claim that prison officials fabricated evidence so that plaintiff would be wrongfully convicted of prison disciplinary infractions, causing him to lose good-time credits, because the disciplinary conviction had not been invalidated). The Plaintiff, however, has not alleged that any disciplinary convictions have been reversed or otherwise invalidated. Therefore, any claim based on false disciplinary charges appears to be barred by Heck. The Court, therefore, will dismiss this claim.

**H. State Law Claims**

Federal district courts may entertain claims not otherwise within their adjudicatory authority when those claims "are so related to claims ... within [federal-court competence] that they form part of the same case or controversy." 28 U.S.C. § 1367(a). To exercise supplemental jurisdiction, a court must find that "[t]he state and federal claims ... derive from a common nucleus of operative fact" where a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). When a district court dismisses all claims independently qualifying for the exercise of federal jurisdiction, it "ordinarily dismiss[es] all related state claims." Artis v. Dist. Of Columbia, 138 S.Ct. 594, 595 (2018); see 28 U.S.C. § 1367(c)(3). A district court may also dismiss the related state claims if (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; or (3) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(1), (2), and (4).

Plaintiff seeks to state a state law assault and battery claim against Defendants Smith and John Doe #1. Because Plaintiff's assault and battery claim is so related to his surviving federal excessive force claim as to form part of the same case or controversy, the Court will exercise supplemental jurisdiction over it and allow it to pass initial review against Defendant Smith. Plaintiff, however, has failed to state such a claim against Defendant John Doe #1, who Plaintiff only alleges was present when Smith intimidated and struck the Plaintiff.

While there is some question whether individual capacity negligence claims against prison officials must now be brought before the North Carolina Industrial Commission, see N.C. Gen. Stat. § 143-291(e), the Court declines at this stage of the proceedings to dismiss Plaintiff's negligence claims on this ground. See Neal v. Carter, No. 5:24-CT-3138-FL, 2026 WL 820852, at

*5 n.4 (E.D.N.C. Mar. 25, 2026) (noting that "[m]ost district courts that have addressed the issue have determined that subsection (e) does not preclude individual capacity negligence claims in federal court").

At this early stage of the proceedings, the Court will allow Plaintiff's negligence claims against Defendants Blankenship, Smith, and Varney based on the alleged breach of their duty to protect Plaintiff from harm by other inmates to pass initial review as not clearly frivolous. Plaintiff, however, has failed to state a negligence claim against Defendant Smith based on the alleged use of excessive force. The intentional use of force is not negligence. The Court will dismiss this claim.

Plaintiff also seeks to state negligence claims against Defendants Huffman, Jane Doe #1, and Jane Doe #2 based on the alleged inadequate provision of medical care. Because, however, Plaintiff's federal claims against these Defendants have not passed initial review and because the negligence claims do not derive from the same nucleus of operative facts as those surviving federal claims, the Court declines to exercise supplemental jurisdiction and will dismiss these state claims without prejudice. See Artis v. Dist. Of Columbia, 583 U.S. 71, 74 (2018) (when a district court dismisses all claims independently qualifying for the exercise of federal jurisdiction, it "ordinarily dismiss[es] as well all related state claims."); 28 U.S.C. § 1367(c)(3).

**G. Individuals Not Named as Defendants**

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties[.]"); Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("[T]o make someone a party the plaintiff must specify him in the caption and arrange for service of process."); Perez v. Humphries, No. 3:18-cv-107-GCM, 2018

WL 4705560, at *1 (W.D.N.C. Oct. 1, 2018) ("A plaintiff's failure to name a defendant in the caption of a Complaint renders any action against the purported defendant a legal nullity."). The allegations directed at individuals not named as Defendants are therefore dismissed without prejudice. Plaintiff may, however, amend his Complaint to add any intended but unnamed defendants to the caption of the Complaint, as appropriate. See Nichols v. Bumgarner, 173 F.4th 511, 519 (4th Cir. 2026).

Furthermore, to establish liability under 42 U.S.C. § 1983, a plaintiff "must affirmatively show that the official charged acted personally in the deprivation of [his] rights." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (cleaned up); see Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). Mere knowledge of a deprivation is insufficient. Williamson, 912 F.3d at 171. Here, Plaintiff makes no allegations against Defendants John Does #3 through #5 or Jane Does #3 through #5. The Court, therefore, will dismiss these Defendants for Plaintiff's failure to state a claim for relief against them.

Finally, to the extent Plaintiff intends to seek relief for any events occurring since his transfer to Scotland CI, the Court is without authority to adjudicate such claims. The Court will dismiss them.

## IV. CONCLUSION

In sum, Plaintiff's First Amendment retaliation claims against Defendants Blankenship, Smith, and John Doe #1; Plaintiff's Eighth Amendment excessive force claim against Defendant Smith; Plaintiff's Eighth Amendment failure to protect claims against Defendants Varney, Blankenship, and John Doe #1; Plaintiff's Eighth Amendment medical deliberate indifference claim against Defendant Blankenship; and Plaintiff's assault and battery claim against Defendant Smith survive initial review. Plaintiff's remaining claims fail initial review and will be dismissed.

Before the Court can facilitate service on Defendant John Doe #1, Plaintiff must identify him. The Court will order Plaintiff to identify this Defendant within 21 days of this Order. If Plaintiff is unable to identify this Defendant by name, he must submit any and all information he knows that may assist in his identification by the North Carolina Attorney General's Office. **Plaintiff's failure to timely identify this Defendant or otherwise comply with this Order may result in dismissal of this Defendant without prejudice**.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's First Amendment retaliation claims against Defendants Blankenship, Smith, and John Doe #1; Plaintiff's Eighth Amendment excessive force claim against Defendant Smith; Plaintiff's Eighth Amendment failure to protect claims against Defendants Varney, Blankenship, and John Doe #1; Plaintiff's Eighth Amendment medical deliberate indifference claim against Defendant Blankenship; and Plaintiff's assault and battery claim against Defendant Smith pass initial review in accordance with the terms of this Order. Plaintiff's remaining claims are **DISMISSED** as further set forth in this Order.

**IT IS FURTHER ORDERED** that Defendants Huffman, John Does #2 through #5, and Jane Does #1 through #5 are hereby **DISMISSED** as Defendants in this matter.

**IT IS FURTHER ORDERED** that Plaintiff shall identify Defendant John Doe #1 within 21 days of this Order in accordance with the terms of this Order or this Defendant may be dismissed without prejudice.

**IT IS FURTHER ORDERED** that Clerk of Court shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Monica Z. Varney, FNU Smith, and FNU Blankenship, who are alleged to be current or former employees of the North Carolina Department of Adult Correction.

The Clerk is also instructed to mail Plaintiff an Opt-In/Opt-Out form pursuant to Standing Order 3:19-mc-00060-FDW.

**IT IS SO ORDERED**.

Signed: September 14, 2026

Frank D. Whitney
Senior United States District Judge